UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CORDARYL SILVA, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CASE NO. 3:24-cv-00336 (MPS) |
| | : | |
| COMMISSIONER OF CORRECTION, | : | |
| *et al.*, | : | |
| Respondents. | : | |

---

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

In this habeas corpus action filed under 28 U.S.C. § 2254, the petitioner, Cordaryl Silva,

challenges his 2014 conviction for murder. For the reasons that follow, the petitioner's habeas

petition is **DENIED**.

**I.      Factual and Procedural Background**

**A.      State proceedings**

The petitioner was convicted of murder by a jury and sentenced to fifty years'

imprisonment and ten years' special parole in June of 2014. *State v. Silva*, 166 Conn. App. 255,

257–58 (2016). The petitioner appealed, raising two arguments: (1) the trial court violated his

Sixth and Fourteenth Amendment right to represent himself, and (2) the State violated his Fifth

and Fourteenth Amendment privilege against self-incrimination by using his post-*Miranda*

silence to imply guilt. *See id.* at 257. The Appellate Court of Connecticut disagreed, affirming

the petitioner's conviction. *Id.* at 286. The Supreme Court of Connecticut denied discretionary

review. *See State v. Silva*, 323 Conn. 913 (2016).

The petitioner then filed an application for habeas corpus in state court, alleging fourteen

claims of ineffective assistance of counsel. *Silva v. Comm'r of Corr.*, No. CV164007840S, 2021

WL 6426771, at *1 (Conn. Super. Ct. Dec. 14, 2021). The state court rejected all claims and

denied the petitioner's application. *Id.* at *24. The Appellate Court of Connecticut affirmed the

denial of the application in a *per curiam* opinion. *Silva v. Comm'r of Correction*, 221 Conn. App.

901 (2023). The Supreme Court of Connecticut denied discretionary review. *See Silva v. Comm'r

of Correction*, 348 Conn. 933 (2024).

      **B.**     **Federal Proceedings**

The petitioner filed a timely petition for writ of habeas corpus under 28 U.S.C. § 2254 on

March 11, 2024. ECF No. 1. The petitioner largely renews the claims he raised on direct appeal

and in his application for habeas corpus filed in state court. He claims (1) the trial court violated

his Fifth and Fourteenth Amendment rights by permitting the State to use his post-*Miranda*

silence against him to imply guilt, ECF No. 1 at 9; (2) the trial court violated his Sixth and

Fourteenth Amendment right to represent himself, *id.* at 11; and (3) trial counsel violated his

Sixth Amendment right to the effective assistance of counsel. *Id.* at 13.

## II.    Standard of Review

The Court will entertain a petition for writ of habeas corpus challenging a state court

conviction only if the petitioner claims that his custody violates the Constitution or federal laws.

*See* 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is

not cognizable in this court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings

and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559

U.S. 766, 773 (2010) (citations and internal quotations omitted). This Court cannot grant a

petition for writ of habeas corpus filed by a person in state custody with regard to any claim that

was rejected on the merits by the state court unless the adjudication of the claim in state court

either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d). This is a very difficult standard to meet. *Metrish v. Lancaster*, 569 U.S.

351, 357–58 (2013).

Clearly established federal law is found in holdings, not dicta, of the United States

Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505

(2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute

'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567

U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly

established federal law when it applies a rule different from that set forth by the Supreme Court

or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v.

Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when it

has correctly identified the law but unreasonably applies that law to the facts of the case or

refuses to extend a legal principle clearly established by the Supreme Court to circumstances

intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir.

2008).

It is not enough that the state court decision is incorrect or erroneous. *Eze v. Senkowski*,

321 F.3d 110, 124–25 (2d Cir. 2003). Rather, the state court application of clearly established

law must be objectively unreasonable, a substantially higher standard. *Id.*; *Schriro v. Landrigan*,

550 U.S. 465, 473 (2007). Thus, a state prisoner must show that the challenged court ruling "was so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 389 (2000) ("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

When reviewing a habeas petition, this Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* Moreover, this Court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.    Discussion

### A.    Fifth and Fourteenth Amendment post-*Miranda* silence claim (Claim 1)

The petitioner first claims that the trial court violated his Fifth and Fourteenth Amendment rights by permitting the State to use his post-*Miranda* silence to imply guilt. *See* ECF No. 1 at 9. This claim was preserved for habeas review by raising it on direct appeal. *See Silva*, 166 Conn. App. at 276.

The Fifth Amendment provides, in pertinent part, that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment is applicable to state criminal proceedings by virtue of the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The Fifth Amendment "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges

him not to answer official questions put to him in any other proceeding, civil or criminal, formal

or informal, where the answers might incriminate him in future criminal proceedings.'"

*Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77

(1973)).

      The Supreme Court established in *Miranda v. Arizona* that "the prosecution may not use

statements…stemming from custodial interrogation of the defendant unless it demonstrates the

use of procedural safeguards effective to secure the privilege against self-incrimination." 384

U.S. 436, 444 (1966). *Miranda* requires that "prior to the initiation of [custodial] questioning,

[law enforcement officers] must fully apprise the suspect of the [government's] intention to use

his statements to secure a conviction, and must inform him of his rights to remain silent and to

'have counsel present…if [he] so desires.'" *Moran v. Burbine,* 475 U.S. 412, 420 (1986) (fourth

alteration in original) (quoting *Miranda*, 384 U.S. at 468–70). If a suspect maintains his right to

remain silent, the Supreme Court has held that "it would be fundamentally unfair and a

deprivation of due process" to permit a defendant's post-*Miranda* silence to be used for

impeachment purposes at trial. *Doyle v. Ohio*, 426 U.S. 610, 618–19 (1976). But if a suspect

knowingly and voluntarily waives his *Miranda* rights, "law enforcement officials may continue

questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512

U.S. 452, 461 (1994).

      Trial evidence showed the petitioner had an ongoing feud with a man named Javon

Zimmerman. *Silva*, 166 Conn. App. at 258. That feud "came to a head" on May 12, 2012, when

the petitioner approached Zimmerman, who was sitting in a vehicle parked in the parking lot of

RJ's Café, a bar in Derby. *Id.* As Zimmerman jumped out of his vehicle, the petitioner walked

towards him, "said, 'Fuck you, Javon,' and shot him two times." *Id.* Zimmerman died in the parking lot. *Id.* The petitioner was charged with Zimmerman's murder and tried before a jury. *See id.*

A detective testified at trial that he interviewed the petitioner after police arrested him for the murder of Zimmerman. *Id.* at 276–77. After advising the petitioner of his *Miranda* rights, the detective told the petitioner that he wanted to discuss the petitioner's possible involvement in a shooting at R.J.'s Café. *Id.* at 277. The petitioner told the detective that he had been at the bar at the time of the murder, had an altercation with Zimmerman in the parking lot, and then ran away. *Id.* When asked if he murdered Zimmerman, "the defendant did not reply, and just gave 'a blank stare' and shrugged." *Id.* The petitioner refused to answer the question but continued answering other questions and agreed to provide a DNA sample. *Id.* at 277–78.

The petitioner later testified at trial, admitting that he had been at the bar at the time of the shooting but fled when he saw a flash and heard gunshots. *Id.* at 278. The petitioner denied shooting Zimmerman but refused to name the shooter. *Id.* On cross-examination, the prosecutor asked the petitioner about his refusal to name the shooter. *See id.* The prosecutor asked the petitioner why he did not name the shooter during four hours of police questioning. *Id.* at 278–79. The petitioner told the prosecutor that he said "nothing" to the detective about who shot the victim because the detective asked him what happened that night and the petitioner told him that he "[didn't] want to even get into that." *Id.* at 279. During closing argument, the prosecutor referenced the petitioner's refusal to tell the detective whether he shot Zimmerman and the shrug that accompanied that refusal. *Id.*

6

The petitioner argued on appeal that the prosecutor's comments violated the holding of the U.S. Supreme Court's decision in *Doyle*. *See id.* The State argued its comments did not violate *Doyle* because the petitioner never invoked his right to remain silent. *See id.* The Appellate Court sided with the State. *See id.* at 285. The Appellate Court concluded that "defendant's expression of a disinclination to answer one question was not tantamount to any assertion of his fifth amendment right." *Id.* at 284. Accordingly, the Appellate Court held there was no *Doyle* violation. *Id.* at 285.

The Appellate Court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In *Doyle*, the issue was "whether a state prosecutor may seek to impeach a defendant's exculpatory story, *told for the first time at trial*, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest." *Doyle*, 426 U.S. at 611 (emphasis added). *Doyle* involved defendants who, like the petitioner, were given *Miranda* warnings upon arrest, but who, unlike the petitioner, did not provide police with a statement after *Miranda* warnings were given. *See Doyle*, 426 U.S. at 612–14. The *Doyle* court held that it was unfair, in that circumstance, for the State to use the defendants' post-arrest silence to impeach the defendants' exculpatory testimony at trial. *Id.* at 618. In plain terms, the State could not fault the defendants for failing to give their exculpatory story to police when those defendants had a right to remain silent and invoked that right after being so advised.

The petitioner, like the defendants in *Doyle*, was advised of his *Miranda* rights after he was arrested. *Silva*, 166 Conn. App. at 277. But the similarities end there. After being advised of

his *Miranda* rights, the petitioner gave his account to police, apart from answering the ultimate question: whether he murdered the victim. *Id.* at 277–78. The petitioner did not, like the defendants in *Doyle*, invoke his right to remain silent and tell his exculpatory story "for the first time at trial." *Doyle*, 426 U.S. at 611. Rather, the petitioner told his story for the first time after police arrested him. *See Silva*, 166 Conn. App. at 277–78.

The Supreme Court later confronted similar facts in *Salinas v. Texas*, 570 U.S. 178 (2013). The defendant in *Salinas* voluntarily answered questions from police investigating a murder. *Id.* at 181. The interview was noncustodial and the police did not read Salinas a *Miranda* warning. *Id.* Salinas answered all the officer's questions but one: whether the shotgun shells from the crime scene would match Salinas's gun. *Id.* at 182. At that question, Salinas "'[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up.'" *Id.* (quotation omitted). He then continued answering the officer's questions. *Id.* Salinas was later charged with murder. *Id.*

Prosecutors used Salinas's evasive response to the officer's question about the shotgun shells as evidence of his guilt. *Id.* Salinas, like the petitioner, argued this violated his Fifth Amendment rights. *Id.* But the Supreme Court held that because defendant failed to invoke his Fifth Amendment right to remain silent during the interview, "the prosecution's use of his noncustodial silence did not violate the Fifth Amendment." *Salinas*, 570 U.S. at 186.

*Salinas* differs from the petitioner's case in some factual respects, but these differences do not compel another result. Salinas, unlike the petitioner, was not in a custodial setting when interviewed. *Compare Silva*, 166 Conn. App. at 277, *with Salinas*, 570 U.S. at 182. Suspects like the petitioner "subjected to the 'inherently compelling pressures' of an unwarned custodial

interrogation need not invoke the privilege," *Salinas*, 570 U.S. at 184 (quoting *Miranda*, 384 U.S. at 467–468, n.37), "unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it." *Murphy*, 465 U.S. at 430 (citing *Miranda*, 384 U.S. at 467–69). It follows then that if police suitably warn a suspect of his right to remain silent in a custodial setting, as police did here, *Silva*, 166 Conn. App. at 277, the suspect must affirmatively invoke the privilege to receive its protections. *See Davis*, 512 U.S. at 460–61 (suspect must affirmatively invoke Fifth Amendment rights after they are explained to him).

Answering some questions, but not others, after *Miranda* warnings are given cannot serve as an affirmative invocation of a suspect's Fifth Amendment rights. *See United States v. Ramirez*, 79 F.3d 298, 305 (2d Cir. 1996) (holding that defendant's "silence in the wake of two questions, while answering others, did not constitute even an equivocal invocation of his right to remain silent."). Because the petitioner failed to invoke his Fifth Amendment privilege after being advised of it, he was as unprotected by the Fifth Amendment as Salinas. *See Salinas*, 570 U.S. at 186 (holding that State's use of defendant's silence did not violate the Fifth Amendment because defendant did not invoke his Fifth Amendment right to remain silent).

A suspect who, like the petitioner and the defendant in *Salinas*, does not invoke his or her Fifth Amendment right to remain silent and answer questions during a police interview, cannot invoke the protections of *Doyle*. *Doyle* only protects defendants who tell their exculpatory story "for the first time at trial." *Doyle*, 426 U.S. at 611. The wrong *Doyle* sought to address was a prosecutor using a defendant's post-arrest silence against him to undermine his testimony at trial. *See id.* at 618. But if a defendant does not remain silent post-arrest, like petitioner and the

defendant in *Salinas*, he cannot later claim the protections of *Doyle* at trial. The Appellate Court reached this conclusion in the petitioner's case. *See Silva*, 166 Conn. App. at 285. Regardless of whether I would agree with that conclusion if the case were before me in the first instance, I conclude that the petitioner has not shown that the Appellate Court's decision "was contrary to…clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Nor has the petitioner shown that the Appellate Court's decision "involved an unreasonable application of…clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* "A state-court decision reflects an 'unreasonable application of' clearly established federal law 'if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Ervine v. Smith*, No. 22-1165, 2024 WL 3219501 (2d Cir. June 28, 2024) (quotation omitted). "The state court decision must be objectively unreasonable, not just incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 65 (2003).

The State court did not unreasonably apply clearly established federal law. The Appellate Court noted at the onset that "a state may not use a defendant's post-*Miranda* silence to imply that he is guilty of the crime charged." *Silva*, 166 Conn. App. at 276 (citing *Doyle*, 426 U.S. at 617–18). The Court then recognized two categories of *Doyle* violations recognized by Connecticut appellate courts: (1) when "the defendant has made it clear that he does not want to answer any questions relating to the commission of the crime," *id.* at 281, and (2) when "the defendant has started to answer questions, and then clearly has invoked his right to remain silent and to stop answering questions." *Id.* at 282. The Court also recognized that a *Doyle* violation

10

does not occur when "the defendant has not invoked his right to remain silent or has remained 'selectively silent[.]'" *Id.* at 283. The Appellate Court concluded "the state's use of the defendant's failure to answer questions about whether he killed Javon Zimmerman, asked in the midst of a police interview, was not a *Doyle* violation" because "[t]he defendant remained selectively silent when asked if he had committed the crime, yet answered questions before and after about his relationship with the victim and his whereabouts on the morning of the victim's murder." *Id.* at 285.

The Second Circuit confronted a similar situation in *United States v. Ramirez*, 79 F.3d 298 (2d Cir. 1996). There, agents searched Ramirez's apartment, finding cocaine. *Id.* at 301. Agents transported Ramirez to the DEA office and advised him of his *Miranda* rights. *Id.* When asked by agents who owned the cocaine, Ramirez told agents that the agents' "friend knew who owned the cocaine." *Id.* When asked where the cocaine was to be delivered, Ramirez did not respond. *Id.* When asked how much the cocaine was selling for, Ramirez told the agent. *Id.* at 300–01. The following day, as Ramirez was being processed in the courthouse, agents asked him to whom the cocaine belonged. *Id.* at 301. Ramirez admitted that the cocaine was his. *Id.*

Ramirez argued that his admission at the courthouse should have been suppressed because he had refused to answer questions during the interview at the DEA office the day before. *Id.* at 304. The *Ramirez* court disagreed, concluding that "Ramirez's silence in the wake of two questions, while answering others, did not constitute even an equivocal invocation of his right to remain silent." *Id.* at 305. Relying on *Davis* (cited above), the *Ramirez* court reasoned that "Ramirez's nonresponse to two questions, having answered others, did not require the cessation of questioning since his silence certainly did not constitute a 'clear[ ]' request that all

11

further questioning cease." *Id.* (quoting *Davis*, 114 S.Ct. at 2356). The *Ramirez* court thus affirmed the district court's denial of Ramirez's motion to suppress "[s]ince Ramirez had been properly advised of his rights and agreed to answer questions, and thereafter neither remained entirely silent nor stated that he wished to be asked no further questions but instead simply answered some questions and did not respond to others[.]" *Id.*

Courts in this circuit have subsequently applied *Ramirez* in the context of habeas cases similar to the petitioner's. In *Holland v. Donnelly*, 216 F. Supp. 2d 227, 238 (S.D.N.Y. 2002), *aff'd*, 324 F.3d 99 (2d Cir. 2003), for example, a state trial court ruled that defendant's "selective silence" "did not constitute an invocation of his privilege, or express a desire to remain silent" "after having been properly advised of his rights and choosing to answer earlier questions, and before choosing again to respond to renewed questioning the following morning." The *Holland* Court found *Ramirez* "strikingly similar" to the habeas petitioner's case. *Id.* at 239. The *Holland* court concluded that "[i]f *Ramirez* represents a correct understanding of Supreme Court precedent—and this Court is of course compelled to recognize it is such—then the state court's similar conclusion in the instant case certainly cannot be held to be an 'unreasonable application' of that precedent." *Id.* at 240. The petitioner's case is likewise similar to *Ramirez* and *Holland* in all relevant respects. Thus, this Court concludes, as the *Holland* court did, that the state court reasonably applied clearly established federal law. Accordingly, this claim is denied.

**B.     Sixth and Fourteenth Amendment self-representation claim (Claim 2)**

The petitioner next argues that he was denied his Sixth and Fourteenth Amendment right to represent himself at trial. ECF No. 1 at 11. The petitioner preserved this claim for habeas review by raising it on direct appeal. *Silva*, 166 Conn. App. at 259.

12

"Under the Sixth Amendment, the accused is guaranteed the right of electing to represent himself." *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994) (citing *Faretta v. California,* 422 U.S. 806 (1975)). "A criminal defendant may proceed *pro se* if he 'knowingly, voluntarily, and unequivocally' waives his right to appointed counsel." *Id.* (citation omitted). But "[a] criminal defendant must make a timely and unequivocal request to proceed *pro se* in order to ensure the orderly administration of justice and prevent the disruption of both the pre-trial proceedings and a criminal trial." *Id.* (citation omitted). If "a defendant's request to proceed *pro se* is informed, voluntary and unequivocal, '[t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial.'" *Id.* (quotation omitted; emphasis original).

"Distinct considerations bear upon requests made after a trial has begun." *Id.* If a trial is in progress when the request is made, the trial court "must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress." *Id.* at 100 n.1 (citing *United States v. Matsushita,* 794 F.2d 46, 51 (2d Cir. 1986)). "In exercising this discretion, the appropriate criteria for a trial judge to consider are the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel." *Ibid.* (citing *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976)).

The petitioner was represented by counsel at trial. *Silva*, 166 Conn. App. at 259. After the trial court gave preliminary jury instructions to the jury, the petitioner's counsel told the trial court that the petitioner wanted to represent himself. *Id.* at 260. But when questioned by the trial court, the petitioner told the trial court that he wanted a different attorney, not to represent

13

himself, because his attorney had not subpoenaed certain witnesses. *Id.* at 261. After asking the petitioner questions about himself, the trial court denied the petitioner's motion to represent himself. *Id.* at 261–62. The petitioner again asked to represent himself after several State witnesses had testified. *Id.* at 262–63. The trial court denied his request because the petitioner was "[u]nab[le] to understand when strategic decisions are being made in [his] best interest." *Id.* at 265. The trial proceeded and the petitioner never renewed his request to represent himself. *Id.*

The Appellate Court determined that the petitioner's first request to represent himself, made through counsel, "was not clear and unequivocal because the defendant expressly disavowed his attorney's request for self-representation when he said that he 'didn't want self-representation.'" *Silva*, 166 Conn. App. at 270. But the Appellate Court determined that the petitioner's second request, made himself after several state witnesses had testified, was clear and unequivocal. *Id.* at 271. After establishing this, the Appellate Court considered whether the trial court appropriately weighed "the *Flanagan* factors." *See id.* at 274–76. The "*Flanagan* factors" come from *State v. Flanagan*, 293 Conn. 406 (2009), in which the Connecticut Supreme Court "conclude[d] that the balancing test employed by the Second Circuit applies to criminal defendants' midtrial requests to proceed pro se." *Flanagan*, 293 Conn. at 428 (citing *Williams v. Barlett*, 44 F.3d at 99–100 n.1). This is the same balancing test described above.

The Appellate Court determined that "the trial court clearly considered the relevant *Flanagan* factors in evaluating the defendant's request for self-representation and determined that the first factor, in particular, did not weigh in favor of granting his request." *Silva*, 166 Conn. App. at 276. Specifically, "[t]he trial court determined that the defendant's reasons for wanting to represent himself would ultimately waste the court's time and be prejudicial to the defendant."

14

*Id.* The Appellate Court decided that "because the court determined that two of the *Flanagan* factors did not provide a strong enough reason to justify a potential disruption in the proceedings, the court was not required to make any finding as to whether a disruption would actually occur." *Id.* The Appellate Court "therefore f[ou]nd no basis to conclude that the trial court abused its discretion in denying the defendant's clear and unequivocal request for self-representation." *Id.*

The Appellate Court's decision was not "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Appellate Court decided this issue after balancing the "*Flanagan* factors." *See Silva*, 166 Conn. App. at 276. The Connecticut Supreme Court adopted those factors from the Second Circuit's decision in *Williams*. *See Flanagan*, 293 Conn. at 428. *Williams* rests on the Second Circuit's previous decision in *Sapienza*, in which the test was originally formulated. *See Williams*, 44 F.3d at 100 n.1. *Sapienza*, in turn, relied on the Second Circuit's previous decision in *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied, 384 U.S. 1007 (1966), in which the Second Circuit held that:

> Once the trial has begun with the defendant represented by counsel,…his right thereafter to discharge his lawyer, and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance.

*Sapienza*, 534 F.2d at 1010. The Second Circuit noted in *Sapienza* that "[t]he recent Supreme Court decision, *Faretta v. California*[ ], casts no pall on our *Maldonado* ruling." *Id.* "*Faretta* does not involve motions made after the commencement of trial and in that decision the Court cited (without disapproval) *Maldonado* which does." *Id.* (citing *Faretta*, *supra*, at 817). The *Sapienza* court concluded that it must therefore "adhere to *Maldonado*." *Id.*

The lineage of the rule applied by the Appellate Court can be traced directly to *Faretta*, which first recognized that a defendant's right to self-representation "finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged." *Faretta*, *supra* at 818. The Appellate Court's decision and *Faretta* are thus in accord. As a result, Petitioner has not shown that the Appellate Court's decision "was contrary to…clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Nor has the petitioner shown that the Appellate Court's decision "involved an unreasonable application of…clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Appellate Court straightforwardly applied a well-established test to conclude that the trial court appropriately considered and denied the petitioners' request to proceed *pro se*. A straightforward application of a well-established test cannot be an unreasonable application of clearly established federal law. *See*, *e.g.*, *Ruiz v. Burge*, No. 05-CV-10069(CS), 2010 WL 107834, at *3 (S.D.N.Y. Jan. 11, 2010) (concluding that "[e]xclusion of...testimony via a straightforward application of the reliability-based rules of evidence did not constitute an objectively unreasonable application of clearly established Supreme Court precedent...").

### C.    Ineffective assistance of counsel claims (Claim 3)

The petitioner last asserts various ineffective assistance of counsel claims under the Fifth, Sixth, and Fourteenth Amendments. ECF No. 1 at 13. The petitioner references his brief in support of his petition for more details on these claims. *See id.* The supporting brief realleges ineffective assistance of counsel claims the petitioner brought in his postconviction application.

*See* ECF No. 1-1. Because the petitioner raised these claims in his postconviction proceedings, they are preserved for habeas review.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that the deficient performance caused prejudice to her. *Id.* at 687–88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating unconstitutional representation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The Court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005).

To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate both deficient performance and sufficient prejudice. *Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. *See United States v. Gahagen*, 44 F.4th 99, 107–08 (2d Cir. 2022) (declining to consider deficient performance when defendant was unable to establish prejudice). When reviewing ineffective assistance of counsel claims, federal review "must be doubly deferential in order to afford both

the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citation omitted).

Because the Appellate Court and Connecticut Supreme Court did not provide reasoned opinions, *see Silva v. Comm'r of Corr.*, 221 Conn. App. 901 (2023), cert. denied, 348 Conn. 933 (2024), this Court looks to the state court's decision denying the petitioner's postconviction application to determine whether habeas relief is warranted. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (the Court considers the last reasoned state court decision in evaluating a § 2254 petition).

The petitioner raised fourteen claims of ineffective assistance of counsel in his postconviction application. *See Silva v. Comm'r of Corr.*, No. CV164007840S, 2021 WL 6426771, at *1. The state court denied them all as either unproven or insufficient under *Strickland*. *See id.* at *24 (concluding that "Silva's numerous claims are denied as unproven. Even assuming deficient performance by [trial counsel], Silva has not proven that there is a reasonable probability of a different outcome given the strength of the state's case against him and the evidence presented to the jury.").

Though the petitioner brought fourteen claims of ineffective assistance of counsel in his postconviction application, *id.* at *1, it is unnecessary to recite details of those claims here because the state court denied these claims as either factually unproven or legally insufficient under *Strickland*. *See id.* at *24. As to the factually unproven allegations, a federal habeas court must defer to the state court's factual findings made after a twelve-day trial on his postconviction application. *See Oppel v. Meachum*, 851 F.2d 34, 37 (2d Cir. 1988) (citing 28 U.S.C. §§ 2254(d)(2), (3) and (8)) ("Under 28 U.S.C. § 2254(d) a federal habeas court must defer to the

18

state court's factual findings where the material facts are adequately developed after a full and fair hearing unless the federal court concludes that the record as a whole does not fairly support the state court's determination.").

As to the allegations that were legally insufficient under *Strickland*, these claims cannot form the basis for federal habeas relief because the state court denied these claims applying *Strickland*. Thus, the claims denied under *Strickland* cannot be "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Harris v. Phillips*, No. 05-CV-2870 RRM, 2013 WL 1290790, at *10 (E.D.N.Y. Mar. 28, 2013) (citing *Williams*, 529 U.S. at 390–91) (noting "*Strickland* is 'clearly established Federal law' within the meaning of AEDPA, and thus petitioner may only obtain habeas relief on his ineffective assistance of counsel claims if the state courts applied *Strickland* unreasonably.").

This Court must determine next whether the state court decision was a reasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1). The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did" and "measure[s] the state-court decision against Supreme Court precedents as of 'the time the state court rendered its decision.'" *Pinholster,* 562 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) ("[E]valuating whether a rule application was unreasonable requires considering the

rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

Claim 10 (failure to know the case), Claim 12 (failure to investigate witnesses), and Claim 13 (failure to object to the State's request to charge) were all denied as factually unproven. *Silva*, No. CV164007840S, 2021 WL 6426771, at *21, *23, *24. The state court could not have unreasonably applied *Strickland* to these claims because they lacked a factual basis. As to the remaining claims, the state court concluded that the petitioner either failed to prove deficient performance or deficient performance was presumed but the claims nonetheless failed because the alleged errors did not prejudice the petitioner under *Strickland*. *See id.* at *16–*21, *23.

To prove prejudice under *Strickland*, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694. The state court recited that standard, *see Silva*, No. CV164007840S, 2021 WL 6426771, at *10–*11, and applied it to each claim for which there was a sufficient factual basis. *See id.* at *16–*21, *23.

It was not unreasonable for the state court to conclude that the alleged errors raised by the petitioner in his postconviction application were not enough to undermine confidence in the guilty verdict. Trial evidence showed that the petitioner was feuding with Javon Zimmerman and his brother. *Id.* at *2. The petitioner approached Zimmerman, who was sitting in a car in the parking lot of a bar. *Id.* Zimmerman jumped out of the car, the petitioner walked towards him, said "Fuck you, Javon," and shot him two times. *Id.* One witness testified that the petitioner had made inculpatory statements inside the bar just before the shooting. *Id.* Another witness arrived

20

at the bar with Zimmerman and identified the petitioner as the shooter. *Id.* A second witness to the shooting identified the petitioner as the shooter to police but later testified at trial that he did not see the shooting. *Id.* A bouncer at the bar identified the petitioner as the shooter. *Id.* The petitioner admitted to two different inmates that he had killed Zimmerman. *Id.*

Several police officers testified about statements the petitioner gave to them. *Id.* The petitioner "did not directly admit that he had killed Javon Zimmerman, but had indicated that he knew exactly what happened and would only reveal the details if the others who were there would also do so." *Id.* The petitioner asked a detective "what sentence he was looking at and if he would get a lesser sentence if he claimed self-defense." *Id.* The petitioner told a detective "'he had been at R.J.'s Café at the time of the murder, that he had an altercation with Javon Zimmerman in the parking lot, and that he ran away after-the altercation.'" *Id.* As recounted above, when asked by a detective if he murdered Zimmerman, the petitioner "did not reply, and just gave 'a blank stare' and shrugged." *Id.* A patrol officer who was two blocks from the shooting when it happened identified the petitioner as running away from the scene. *Id.*

In sum, three eyewitnesses identified the petitioner as the shooter. The petitioner made multiple inculpatory statements before and after the shooting to multiple types of people (a bar patron, law enforcement, other inmates). The petitioner admitted to being at the bar and getting into an altercation with Zimmerman at the time of the shooting. And the petitioner was seen by a police officer fleeing the scene after the shooting occurred. With so much direct evidence of the petitioner's guilt, any error that could undermine confidence in the verdict would need to be overwhelming. The petitioner's "shotgun" approach of raising thirteen claims of ineffective assistance of counsel in his postconviction application (and 147 grounds of error in his post-trial

brief, *id.* at *1), resulted in twelve days of testimony, *id.*, but it was not enough to overcome eyewitness testimony and the petitioner's many inculpatory statements to others. The state court's conclusion that the petitioner's alleged errors did not prejudice the petitioner under *Strickland*, when viewed against the State's strong evidence adduced at trial, was not unreasonable.

## IV.    Conclusion

The petitioner has failed to meet his burden of showing that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, the petition for writ of habeas corpus [ECF No. 1] is **DENIED**. Any appeal of this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of the respondent and close this case.

**SO ORDERED** this 9th day of April 2025, at Hartford, Connecticut.


_____/s/_____
Michael P. Shea
United States District Judge